### No. 2599.

### Second Circuit.

---

### MOFFET v. CRUSADERS OIL PRODUCING COMPANY, INC.

---

(April 10, 1926. Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant— Par. 154, 159.**

Under the Workmen's Compensation Law of Louisiana damages for the weakening and disfiguring of the hand caused by the amputation of two phalanges from each of the third, fourth and fifth fingers of one hand, will not be allowed in addition to the compensation allowed by the law for the loss of the phalanges. The statute specifically fixes the compensation for injuries of the kind suffered by plaintiff, and the

court is without authority to award additional compensation.

Hardin vs. Higgins O. & F. Co., 147 La. 453, 85 South. 202.

Craft vs. Gulf Lumber Co., 151 La. 281, 91 South. 736.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Action by John C. Moffet against the Crusaders Oil Producing Company, for compensation under the Workmen's Compensation Act No. 20 of 1914.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Long and McSween, of Shreveport, attorneys for plaintiff, appellant.

Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE.

REYNOLDS, J. Plaintiff had two phalanges of each of the third, fourth and fifth fingers of the left hand amputated by falling on the blade of an axe. He sued under the workmen's compensation law for the loss of two phalanges from each of these three fingers and also for compensation for the disfiguring of his hand and the weakening of a physical function. He was awarded judgment for $600.00, payable in weekly installments of $20.00 each, with legal interest on each installment from its maturity until paid, the first installment being decreed due July 14, 1925, less a credit of $100.00 previously paid, being the compensation fixed by the act for the loss of the phalanges specified. Plaintiff appealed and asks that the judgment be increased, and insists that he is entitled to compensation during disability, not to ex-

ceed 300 weeks, as for an injury to and weakening of a physical function and for the disfigurement of his hand.

## OPINION.

Plaintiff's contention that in addition to the amount allowed him for the loss of two phalanges from each of the third, fourth and fifth fingers of the left hand he should be allowed compensation for the loss of a physical function is in direct conflict with the decision of the Supreme Court in the case of Craft vs. Gulf Lumber Co., 151 La. 281, 91 South. 736, in which the court, at page 286, says:

"The plaintiff has answered the appeal, praying for an additional allowance for 100 weeks for the permanent and serious impairment of an important physical function, but additional compensation is not allowable where compensation is allowed under other provisions of the statute."

Plaintiff's contention that he is entitled to compensation for the disfiguring of his hand, under clause (e) of subsection 1 of section 8 of the compensation law is in conflict with said clause, which provides:

"In cases not falling within any of the provisions already made, where the employee is seriously, permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously, permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in cases of specific disability above named, not to exceed sixty-five per centum of wages during one hundred weeks."

Compensation for injuries of the kind plaintiff complains of is fully provided for in clause (d) of subsection 1 of section 8 of the law, and hence plaintiff is not entitled to compensation under clause (e) above quoted.

The contention of plaintiff that the loss

of two phalanges from each of the third, fourth and fifth fingers of his left hand is an insignificant injury as compared with the greater injury and greater incapacity from which he suffers outside of and beyond the loss of these phalanges, is in conflict with plaintiff's own testimony that since the accident he went back to work and worked for the plaintiff eight days. He gives no explanation as to why he ceased working at the expiration of the eight days other than that his hand pained him, while in another portion of his testimony he states that he did not use his injured hand practically at all.

Plaintiff testified, pages 5, 6 and 7:

"Q. Then you don't know, until you have tried, just how much you can use your hand?

"A. I went back to the Crusader Oil Co. and worked for eight days.

"Q. Six or seven weeks after you had the fingers cut, you returned to work?

"A. Yes, sir.

"Q. You worked eight days?

"A. Yes, sir.

"Q. Your hand hurt while you worked?

"A. Yes, sir; I used the hand very little; it was impossible for me to use it.

"Q. You received no injury whatever, with the exception of those incurred on the hand?

"A. No, sir.

"Q. Those were the only injuries you received?

"A. Yes, sir.

"Q. Now, this injury is on the left hand, which cut off the two first phalanges at the joint of the fingers, with the exception of the index finger?

"A. Yes, sir.

"Q. Your thumb was not injured?

"A. No, sir.

"Q. And cut the skin of the index finger?

"A. Yes, sir.

"Q. Now, that has not been amputated?

"A. No, sir.

"Q. No part of the index finger was cut off?

"A. No, sir.

"Q. Your index finger looks normal from the outside?

"A. Yes, sir.

"Q. There is no disfigurement on the nail of that finger?

"A. No, sir.

"Q. It looks as if it were perfectly normal as far as you can see?

"A. Yes, sir.

"Q. The palm of the hand was not cut at all?

"A. No, sir.

"Q. Your wrist was not hurt?

"A. No, sir.

"Q. Your injury was confined entirely to the cutting off of the part of the three fingers which you have named?

"A. Yes, sir.

"Q. With the exception of the time that you went back to work at the Crusader Oil Co. and worked eight days, you have not tried to do any work?

"A. No, sir.

"Q. Then you do not know at this time just how much you can do?

"A. Well, no, I could not do the kind of work that I was doing when I had my accident.

"Q. You mean that you will not have the use of the fingers?

"A. No, sir."

Dr. S. C. Caldwell testified, page 13:

"Q. Please state what condition you found the hand?

"A. There is an amputation of the third, fourth and fifth fingers, at what we call the joint, that is, the first joint next to the hand, on those three fingers. The stumps are healed over across the tip end and is healed and that is a matter of importance, as it is not on the inner side, which would be right at the point or ball of the finger that would be used in picking up things. The tendons are all intact, and the nerve supply is intact and functioning."

*    *    *    *

"Q. What would you say as to the condition of the index finger?

"A. I think that the index finger is in a perfectly good condition and will function properly; of course there is a little weakness there, from disuse. There is a slight stiffness, but that is not due to joint involvement by this scar tissue, but disuse. The muscles of the forearm seem to be somewhat weak at this time, three months after the amputation, but he had free use

of them and they will be restored; they will develop all right, I think.

"Q. You have heard the witness testify about the lack of strength in picking up objects; is that due to disuse of that arm?

"A. Yes; the disuse and nonuse; as you understand, when these fingers are amputated, the arm and hand are not used for quite a while, and by use will increase and develop the muscles in strength to where the grip will become better in those fingers than before they were amputated, and he will have this one and thumb to work with."

From all of the evidence we are convinced that the judgment of the District Court is correct and it is accordingly affirmed.